**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION**

| | | |
|---|---|---|
| **JEFFREY BOWDEN, on behalf of himself and a class of others similarly situated,** | ) ) ) | Case No.: 4:18-cv-00489-HFS |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| **HEALTHPORT TECHNOLOGIES, LLC,** et al. | ) ) ) | |
| Defendants. | ) ) | |

## FIRST AMENDED COMPLAINT FOR DAMAGES

COMES NOW, Plaintiff Jeffrey Bowden, by and through his attorneys, on behalf of himself and a class of others similarly situated, and brings this First Amended Complaint for Damages against Defendants HealthPort Technologies, LLC (hereinafter "HealthPort"), IOD Incorporated (hereinafter "IOD"), Ciox Health, LLC (hereinafter "Ciox") and Centerpoint Medical Center of Independence, LLC (hereinafter "Centerpoint") (collectively "Defendants"), as a matter of course within twenty-one (21) days after service of Defendants' Motion to Dismiss for Failure to State a Claim pursuant to Rule 15(a)(1)(B), and alleges as follows:

## INTRODUCTION

1. Plaintiff, and others similarly situated, requested copies of their electronically stored personal health information ("PHI") in electronic format from their medical providers including hospitals, clinics, and other medical facilities.

2. Defendants HealthPort, IOD, and Ciox, providers of release of information ("ROI") services, partner with thousands of hospitals, health systems, physician practices and clinics, including Defendant Centerpoint, to process and fulfill medical record requests,

and to maintain compliance related to releasing medical information to all types of requesters like Plaintiff.

3. Defendant Centerpoint is one of Plaintiff's medical providers.

4. When individuals request their protected electronically stored PHI from a hospital, physician, or group practice that Defendants have engaged for their services, Defendants digitally capture the PHI from the medical facility's electronic or paper medical record through a confidential and secure technology platform. Thereafter, the PHI is digitally transferred for processing where it is packaged and mailed or electronically sent in a HIPAA-compliant format to the patient/requester.

5. When Defendants HealthPort, IOD, and Ciox provide the service to process and fulfill patient medical record requests on behalf of an engaged hospital, physician, or group practice, Defendants charge the requesting patient a fee associated with this service.

6. By charging individuals unreasonable fees associated with their service for the process and fulfillment of an individual's request for his/her medical records, Defendants have caused consumers actual monetary harm for out of pocket costs and expenses.

7. Defendants continue to unreasonably bill individuals when they request copies of their electronically stored PHI in electronic format.

**PARTIES, JURISDICTION AND VENUE**

8. Plaintiff is a citizen of the United States, residing in Independence, Jackson County, Missouri, and a personal requester of his medical information known as PHI.

9. Plaintiff received treatment and ordered his PHI from Defendant Centerpoint in Independence, Jackson County, Missouri.

10. Others similarly situated for the purposes of this class action, also received treatment and ordered medical records from their medical providers in the State of Missouri.

11. Defendant HealthPort, at all relevant times, was a limited liability company operating throughout the United States, including the State of Missouri, and providing release of information (ROI) services, audit management and tracking technologies to hospitals, health systems, physician practices and clinics for the purpose of processing and fulfilling medical record requests as well as maintaining compliance related to the releasing of medical information to all types of requesters throughout the United States, including the State of Missouri. Defendant HealthPort has since changed its name to CIOX Health, LLC, with its principal place of business located in Alpharetta, Georgia, and organized under the laws for the State of Georgia.

12. At all relevant times, Defendant HealthPort was authorized to conduct business in the State of Missouri and was doing business in the State of Missouri.

13. Defendant IOD, at all relevant times, was a business corporation operating throughout the United States, including the State of Missouri, and providing release of information (ROI) services, audit management and tracking technologies to hospitals, health systems, physician practices and clinics for the purpose of processing and fulfilling medical record requests as well as maintaining compliance related to the releasing of medical information to all types of requesters throughout the United States, including the State of Missouri. Defendant IOD was organized under the State of Wisconsin with its principal place of business located in Green Bay, Wisconsin, however, Defendant IOD has since changed its name to CIOX Health, LLC.

3

14. At all relevant times, Defendant IOD was authorized to conduct business in the State of Missouri and was doing business in the State of Missouri.

15. On or about July 1, 2015, Defendant HealthPort merged with Defendant IOD to form HealthPort-IOD. On or around March 1, 2016, HealthPort-IOD changed its name to CIOX Health, LLC. Despite this merger and name change, Defendant CIOX Health, LLC continues to operate and provide services as Defendant HealthPort and Defendant IOD, as well as Defendant CIOX Health, LLC throughout the United States, including the State of Missouri.

16. Defendant CIOX is a limited liability company organized under the laws of Georgia, with its principal place of business located in Alpharetta, Georgia.

17. At all relevant times, Defendant CIOX was authorized to conduct business in the State of Missouri and was doing business in the State of Missouri.

18. Now conducting business as CIOX Health, LLC, a Georgia Limited Liability Company, with locations in all 50 states of the United States, including the State of Missouri, Defendants HealthPort, IOD and Ciox are the single largest access point for meaningful health information in the country. They are embedded at more provider sites across the country — the majority of the U.S. delivery system — as their release of information partner. In addition, they connect numerous provider sites through their field technicians and technology platform for record retrieval. This makes them uniquely positioned to bring consent-driven access to health information to all those who need it — regardless of location, EMR, or health system affiliation. This position places superiority and influence with consumers as to production of a consumers request for electronic PHI. (Exhibit 1, P4).

4

19. Defendant Centerpoint, at all relevant times, was a limited liability company organized under the laws of Delaware, with its principal place of business located in Independence, Jackson County, Missouri.

20. At all relevant times, Defendant Centerpoint was authorized to conduct business in the State of Missouri and was doing business in the State of Missouri.

21. At all relevant times, Defendants' unlawful acts were carried out by Defendants' agents, servants, and employees, all of whom were at all such times acting within the scope and course of their agency and employment, and/or their actions were expressly authorized or ratified by Defendants, thus making Defendants liable for said actions under the doctrine of respondeat superior.

22. The United States District Court for the Western District of Missouri has personal jurisdiction because the Defendants conduct business with this district.

23. The amount in controversy is in excess of $75,000 and the parties are citizens of different states, as such this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 (d).

24. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 (b), inasmuch as the Defendants have offices, conducts business and can be found in the Western District of Missouri, and the causes of action set forth herein have arisen and occurred in substantial part in the Western District of Missouri. Furthermore, Defendants bill consumers in the State of Missouri for services, have contracts with hospitals, physicians and group practices in the State of Missouri, and mail electronically stored PHI to consumers/patients within the State of Missouri.

## OVERVIEW OF HIPAA AND HITECH ACTS

25. The Privacy, Security, and Breach Notification Rules under the Health Insurance Portability and Accountability Act of 1996 (hereinafter "HIPAA") were intended to support information sharing by providing assurance to the public that sensitive health data would be maintained securely and shared only for appropriate purposes or with express authorization of the individual.

    *See* http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/permitted-uses/index.html (Last accessed on July 19, 2018).

26. The Health Information Technology for Economic and Clinical Health Act (hereinafter "HITECH") was enacted under Title XIII of the American Recovery and Reinvestment Act of 2009 to promote the widespread adoption of electronic health records (hereinafter "EHR") and interoperability of health information technology.

    *See* https://www.hhs.gov/hipaa/for-professionals/special-topics/HITECH-act-enforcement-interim-final-rule/index.html?language=es (Last accessed on July 19, 2018).

27. To the extent there is a conflict between state and federal laws concerning an individual's right of electronic access to PHI, HIPAA's electronic right of access requirements preempt the contrary state law unless such law is more stringent.

    *See* https://www.gpo.gov/fdsys/pkg/FR-2013-01-25/pdf/FR-2013-01-25.pdf at p. 5632 (Last accessed on July 19, 2018).

28. Covered entities included the health care provider, health plans, and healthcare clearinghouses. *See* generally 45 C.F.R. § 160.103 (definition of "covered entity").

6

29. Most health care providers and health plans often use the services of a variety of other persons or businesses, known as "business associates" to carry out their health care actives and functions on the covered entities' behalf.

> *See* http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/business-associates/index.html (Last accessed on July 19, 2018); *See also* 45 C.F.R. § 160.103 (definition of "business associate").

30. HIPAA allows covered providers and health plans to disclose protected health information to business associates if the providers or plans obtain satisfactory assurances that their business associates will use the information only for the purposes for which it was engaged by the covered entity, will safeguard the information from misuse, and will help the covered entity comply with the covered entity's duties under the Privacy Rule, which is generally done by contract or other agreement. *Id.*

31. A business associate may use or disclose protected health information only as permitted or required by its business associate contract ensuring appropriate safeguards of PHI or as required by law.

> *See* https://www.gpo.gov/fdsys/pkg/FR-2013-01-25/pdf/FR-2013-01-25.pdf at p. 5632 (Last accessed on July 19, 2018).

32. In relevant part, 45 CFR 164.504(e)(2) mandates that a contract between the covered entity and a business associate provide that a business associate will make available PHI in accordance with § 164.524. *See* 45 CFR 164.504(e)(2)(ii)(E); 42 U.S.C. § 17938.

33. Under 45 CFR 164.524, an individual has a right of access to inspect and obtain a copy of PHI about the individual in a designated record set, for as long as the PHI is maintained in the designated record set. *See also* 42 U.S.C. § 17935(e)(1).

7

34. The right of an individual to have PHI sent directly to a third party is an extension of the individual's right of access; consequently, all of the provisions that apply when an individual obtains access to his or her PHI apply when he or she directs a covered entity to send the PHI to a third party. *See* 45 CFR 164.524(c)(3)(ii); 42 U.S.C § 17935(e)(1).

35. The covered entity must act on a request for access no later than 30 days after receipt. *See* 45 CFR 164.524(b)(2).

36. If the covered entity provides an individual with access, in whole or in part, to PHI, the covered entity must provide the individual with access to the PHI in the form and format requested by the individual, which includes in electronic format. *See* 45 CFR 164.524(c)(2)(i); 42 U.S.C. § 17935(e)(1).

37. On March 1, 2016, HHS issued "access guidance" for professionals, including covered entities and business associates, which specifically clarified what reasonable cost-based fee could be assessed when an individual requested his electronically stored PHI be produced in electronic format.

   *See* http://www.hhs.gov/hipaa/for-professionals/privacy/guidance/access/index.html (Last accessed on July 19, 2018).

38. If the individual requests a copy of the PHI, the covered entity may impose a reasonable, cost-based fee, provided that the fee includes only the cost of labor for copying the PHI requested by the individual, supplies for creating electronic media if the individual requests that the electronic copy be provided on portable media; postage when the individual has requested the copy be mailed; preparation of an explanation or summary of the PHI, if agreed to by the individual. *See* 45 CFR 164.524(c)(4).

39. The fee may not include costs associated with verification; documentation; searching for and retrieving the PHI; maintaining systems; recouping capital for data access, storage, or infrastructure; or other costs not listed above even if such costs are authorized by state law. (Exhibit 2, P6).

40. HHS clarified that labor for copying includes only labor for creating and delivering the electronic or paper copy in the form and format requested or agreed upon by the individual, after the PHI that is responsive to the request has been identified, retrieved or collected, compiled and/or collated, and is ready to be copied. (Exhibit 2, P10).

41. To calculate the reasonable fee to be charged, HHS provided three methods that would be acceptable under HIPAA privacy rules: actual costs, average costs and flat fee. (Exhibit 2, P12-3).

42. Actual costs: A covered entity may calculate actual labor costs to fulfill the request, as long as the labor included is only for copying and the labor rates used are reasonable for such activity. The covered entity may add to the actual labor costs any applicable supply (e.g., paper, or CD or USB drive) or postage costs. (Exhibit 2, P12).

43. Average costs: In lieu of calculating labor costs individually for each request, a covered entity can develop a schedule of costs for labor based on average labor costs to fulfill standard types of access requests, as long as the types of labor costs included are the ones which the Privacy Rule permits to be included in a fee (e.g., labor costs for copying but not for search and retrieval) and are reasonable. Covered entities may add to that amount any applicable supply (e.g., paper, or CD or USB drive) or postage costs. (Exhibit 2, P12-3).

9

44. An entity that chooses to calculate actual costs or average costs must inform the individual in advance of the approximate fee that may be charged for providing the copy requested. (Exhibit 2, P11-3).

45. HHS has made it clear this average cost can be calculated and charged as a per page fee only in cases where the PHI requested is maintained in paper form and the individual requests a paper copy of the PHI or asks that the paper PHI be scanned into an electronic format. Per page fees are not permitted for paper or electronic copies of PHI maintained electronically. (Exhibit 2, P12-13).

46. Furthermore, HHS confirmed charging per page fees for copies of PHI maintained electronically was not reasonable for purposes of 45 CFR 164.524(c)(4). (Exhibit 2, P13).

47. Flat fee: A covered entity, may charge individuals a flat fee for all requests for electronic copies of PHI maintained electronically, provided the fee does not exceed six dollars and fifty cents ($6.50), inclusive of all labor, supplies, and any applicable postage. (Exhibit 2, P13).

## CLASS ACTION ALLEGATIONS

48. All counts in this Complaint are brought against Defendants under Missouri Rule of Civil Procedure 52.08 as a Missouri state-wide class action.

49. Plaintiff seeks relief individually and on behalf of a class of others similarly situated and bring the below claims on behalf of two (2) classes.

50. Class I is defined as: All persons in Missouri whose PHI was maintained in electronic format, who requested their PHI in electronic format, who were provided an electronic copy of their PHI, and who paid an invoice exceeding six dollars and fifty cents ($6.50) from

Defendants (or anyone working on behalf of Defendants) at any time in the last five (5) years.

51. Class II is defined as: All persons in Missouri who requested their PHI in electronic format, regardless of whether or not the PHI was stored in electronic format; who were provided a copy of their PHI; and who paid an invoice exceeding six dollars and fifty cents ($6.50) from Defendants (or anyone working on behalf of Defendants) when Defendants, prior to producing the PHI, did not inform them of any additional charges, at any time in the last five (5) years.

52. All class members are similarly situated to Plaintiff in that they requested their PHI in electronic format, paid an invoice exceeding six dollars and fifty cents ($6.50) from Defendants (or anyone working on behalf of Defendants) and, as such, were overcharged to access their PHI.

53. Plaintiff's class claims satisfy the numerosity, commonality, typicality, adequacy and superiority requirements of a class action.

54. The classes satisfy the numerosity standards as their numbers are believed to number well into the thousands. As a result, joinder of all class members in a single action is impracticable. The class members can be easily identified through records maintained by Defendants. Class members may be informed of the pendency of this class action through direct mail or other appropriate means.

55. There are questions of law or fact common to the Classes, which common issues predominate over any issues involving only individual class members. Factual and/or legal issues common to each class member include:

a. Whether Plaintiff and others similarly situated requested their PHI in electronic format;

b. Whether Plaintiff and others similarly situated paid invoices exceeding six dollars and fifty cents ($6.50) from Defendants (or anyone working on behalf of Defendants);

c. Whether Plaintiff and others similarly situated were overcharged to access their PHI;

d. Whether Defendants informed Plaintiff and others similarly situated of additional charges;

e. Whether Defendants' billing practice violates HIPAA, HITECH Act and the Missouri Fair Business Practices Act, provides unjust enrichment to Defendants; provides money had and received to Defendants, committed fraud and negligence misrepresentation;

f. Whether the class members are entitled to damages based upon Defendants violating HITECH and the Missouri Fair Business Practices Act, unjust enrichment, money had and received, fraud, negligent misrepresentation, punitive damages, and attorney's fees; and

g. Whether Defendants should be enjoined from engaging in such conduct in the future.

56. The aforementioned common questions predominate over any questions affecting individual persons, and a class action is proper as it relates to consistency, economy, efficiency, fairness and equity.

57. The claims of Plaintiff as the Class Representatives are typical of those of the classes because all claims are based on the same facts and legal theories in that class members have requested their PHI and were subject to the same or similar unlawful practices.

58. A class action is the appropriate method for the fair and efficient adjudication of this controversy. Defendants have acted or refused to act on grounds generally applicable to the classes. The presentation of separate actions by individual class members could create a risk of inconsistent and varying results, establish incompatible standards of conduct for Defendants, and/or substantially impair or impede the ability of class members to protect their interests.

59. Plaintiff is an adequate representative of the classes because his interests do not conflict with the interests of the members of the classes he seeks to represent. The interests of the members of the classes will be fairly and adequately protected by Plaintiff and his undersigned counsel.

60. Maintenance of this action as a class action is a fair and efficient method to resolve this controversy. It would be impracticable and undesirable for each member of the classes who suffered harm to bring a separate action. Furthermore, the maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine the rights of all class members in conformity with the interest of efficiency and judicial economy.

## **GENERAL ALLEGATIONS**

61. Defendants HealthPort, IOD and Ciox represent they ensure alignment to HIPAA requirements. (Exhibit 1, P6).

13

62. On or about January 26, 2017, Plaintiff requested a copy of his PHI from his medical provider, Defendant Centerpoint. (Exhibit 5).

63. In that request, Plaintiff requested copies of electronic copies of all medical records pertaining to the treatment and services rendered from on or about April 6, 2016, up to and including the date of his request. (Exhibit 5).

64. Plaintiff requested his records be sent to a third party. (Exhibit 5).

65. On or about February 1, 2017, Defendants received Plaintiff's request for an electronic copy of his PHI. (Exhibit 6).

66. At all relevant times, Defendant Centerpoint, via themselves and/or Defendants HealthPort, IOD and Ciox, maintained Plaintiff's PHI in electronic format.

67. Because Defendant Centerpoint contracted with Defendants HealthPort, IOD, and/or Ciox to fulfill individual requests for electronic copies of PHI, Plaintiff's request for his PHI was forwarded to Defendants HealthPort, IOD, and/or Ciox for processing and completion.

68. Defendants HealthPort, IOD, and/or Ciox were business associates to Defendant Centerpoint and authorized to access Plaintiff's PHI.

69. By virtue of Defendants' contract, they were bound to produce a copy of Plaintiff's PHI subjected to the requirement of 45 CFR 164.524. (Exhibit 3, Sample contract Defendants use with covered entities).

70. On or about February 13, 2017, Defendants Centerpoint, HealthPort, IOD and/or Ciox copied to a CD, one digital file in portable document format (".pdf"), containing 52 pages of Plaintiff's medical records from Defendant Centerpoint.

71. Prior to copying, Plaintiff's PHI with Defendant Centerpoint was maintained in electronic format and did not need to be scanned in from paper copies.

14

72. On or about February 13, 2017, Defendants Centerpoint, HealthPort, IOD and/or Ciox mailed to Plaintiff's designated third party the CD as outlined above, which contained his PHI from Defendant Centerpoint, and a letter addressed to Plaintiff in his name only. (Exhibit 7).

73. On or about February 16, 2017, Defendants Centerpoint, HealthPort, IOD and/or Ciox created in their name an invoice with the invoice number 0210310285, that they mailed to Plaintiff's designated third party. (Exhibit 8).

74. The invoice listed the due date to remit payment within thirty (30) days. (Exhibit 8).

75. Defendants' invoice charged $24.57 for the basic fee, $3.08 for shipping and $2.00 for the notary fee. (Exhibit 8).

76. The invoice charged a per page copy fee of fifty-six (56) cents per page for fifty-two (52) pages, totaling twenty-nine dollars and twelve cents ($29.12). (Exhibit 8).

77. Per page fees are not permitted for electronic copies of PHI that are maintained electronically and thus are unreasonable charges.

78. The invoice's balance due totaled fifty-eight dollars and seventy-seven cents ($58.77). (Exhibit 8).

79. The invoice did not inform Plaintiff that the at-issue records were not maintained in a format other than electronic. Prior to fulfilling and sending Plaintiff's request for PHI, Defendants did not contact Plaintiff to inform him his PHI was not maintained in electronic format or inform him that there would be additional charges to produce his PHI in electronic format. (Exhibit 8).

80. The invoice did not enumerate actual labor costs to fulfill Plaintiff's request. (Exhibit 8).

81. The invoice did not outline the supply costs of the CD. (Exhibit 8).

15

82. The invoice does not indicate the amount of time to make and send the copy in the format requested or multiply the time by an hourly rate. (Exhibit 8).

83. If Defendants were attempting to charge Plaintiff actual costs for the production of his PHI, and given the invoice was mailed after the CD was mailed, Defendants did not inform Plaintiff in advance of the actual or approximate fee that may be charged for providing him with a copy of his PHI in electronic format, including, but not limited to hourly rates, scanning rates for those pages not maintained in electronic format, as well as postage fees associated with shipping. (Exhibit 7 & 8).

84. The invoice did not outline any actual labor charges for copying Plaintiff's electronically stored PHI to the CD. (Exhibit 8).

85. The invoice did not outline any average costs in lieu of calculating labor costs individually. (Exhibit 8).

86. Defendants HealthPort, IOD and Ciox maintain a blog titled HIPAA News & Updates. (Exhibit 10).

87. On or about October 10, 2013, Defendants HealthPort, IOD and Ciox posted an update on their blog regarding HIPAA's new requirements, specifically, "that only labor costs, plus supplies and postage can be charged to patients who request that their records be delivered in electronic format." (Exhibit 10).

88. Defendants HealthPort, IOD and Ciox knew charging a per page fee was unreasonable as early as October 10, 2013, based on their own blog.

89. Likewise, as early as December 20, 2013, HealthPort, IOD and Ciox were notified charging a per page fee was unreasonable based on the investigation and written opinion of HHS,

16

when they and other covered entities were the subject of allegations of unreasonable billing practices. (Exhibit 4).

90. As a result, Defendants' per page charge of twenty-nine dollars and twelve cents ($29.12) was unreasonable and in direct violation of 45 CFR 164.524(c)(4).

91. Defendants knew or should have known their billing practice of charging more than six dollars and fifty cents ($6.50) for electronically stored medical records produced in electronic format was unreasonable and in violation of 45 CFR 164.524(c)(4).

92. Because Defendants chose to forgo calculating their actual charges and average charges and failed to inform Plaintiff in advance of producing his PHI of any associated charges to copy his PHI to electronic format, the most Defendants could reasonably charge Plaintiff for an electronic copy of his PHI was six dollars and fifty cents ($6.50).

93. Any and all state laws that may provide Defendants an ability to charge Plaintiff in excess of six dollars and fifty cents ($6.50) were pre-empted by HIPAA and HITECH.

94. On or about February 24, 2017, the invoice was paid with a check, number 3181, to Defendants in the amount of fifty-eight dollars and seventy-seven cents ($58.77). (Exhibit 9).

95. Defendants received the above outlined check and deposited it.

96. Plaintiff paid the invoice under duress and for his personal use as part of a legal action to pursue recovery of damages he suffered in his wrongful termination of his employment.

97. Plaintiff was under a legal duty to pay the cost of the invoice as a case cost for his wrongful termination lawsuit pursuant to a contractual agreement with his counsel.

98. On or about April 13, 2017, Plaintiff paid for the cost of the invoice as a case cost.

## COUNT I
## UNJUST ENRICHMENT

99. Plaintiff and others similarly situated re-allege and incorporate by reference each and every averment of this Complaint as though fully set forth herein.

100. Defendants have been enriched or benefited by overcharging Plaintiff and others similarly situated for production of their PHI. Such enrichment or benefit was incurred by Defendants at the expense of Plaintiff and others similarly situated.

101. Defendants created invoices and charged Plaintiff and others similarly situated for their electronically stored PHI in electronic format.

102. Plaintiff and others similarly situated reasonably expected to be charged an amount in accordance with the law by Defendants.

103. Defendants' invoices concealed from Plaintiff and others similarly situated the material fact that Plaintiff and others similarly situated only owed six dollars and fifty cents ($6.50) for the production of their PHI.

104. Defendants misrepresented the actual amount owed by Plaintiffs and others similarly situated for the production of their PHI, thereby requesting payment by deceit from Plaintiff and others similarly situated.

105. Defendants' invoices charged an amount that was unreasonable, illegal, unlawful, inequitable and unjust as they were in violation of 45 CRF 164.524(c)(4) (i-iv).

106. Plaintiff and others similarly situated relied on Defendants' invoices and paid them.

107. Because Plaintiff and others similarly situated had a right to receive their electronically stored PHI in electronic format for six dollars and fifty cents ($6.50), and Defendants received from Plaintiff and others similarly situated more than six dollars and fifty cents ($6.50), Defendants received a benefit through misrepresentation and deceit of value.

18

108. Defendants intentionally and with bad faith refused to charge Plaintiff and others similarly situated the proper rate for copies of production of their PHI.

109. Defendants know or should have known the proper rate for production Plaintiff and others similarly situated's PHI as all persons are presumed to know and are bound to take notice of general public laws of the country or state where they reside as well as the legal effect of their acts. *See Hazlett v. Motor Vehicle Department*, 407 P.2d 551 (Kan. 1965).

110. Defendants' purposeful and wrongful policy and practice of overcharging for production of PHI operated to the detriment of Plaintiff and others similarly situated.

111. The benefits Defendants retained were based on unreasonable, illegal, unlawful, unequitable and unjust charges in that Defendants billed per page and exceeded the maximum six dollars and fifty cents ($6.50) that could be charged based on Plaintiff and others similarly situated's requests.

112. It is unjust for Defendants to retain the benefits from overcharging Plaintiff and others similarly situated for production of their PHI.

113. Based on the illegal retention of Plaintiff's fifty-eight dollars and seventy-seven cents ($58.77) and amounts of others similarly situated to be determined at trial, Defendants have been unjustly enriched.

WHEREFORE, Plaintiff and others similarly situated, demand judgment against Defendants and pray for: compensatory damages, as well as reasonable attorneys' fees and costs, including pre-judgment and post-judgment interest as provided by law; and for such other relief the Court deems fair and equitable.

## COUNT II (PLEAD IN THE ALTERNATIVE)
### MONEY HAD AND RECEIVED

19

114. Plaintiff and a class of others similarly situated re-allege and incorporate by reference each and every averment of this Complaint as though fully set forth herein.

115. Defendants created invoices and charged Plaintiff and others similarly situated for their electronically stored PHI in electronic format.

116. Defendants' invoices concealed from Plaintiff and others similarly situated the material fact that Plaintiff and others similarly situated only owed six dollars and fifty cents ($6.50) for the production of their PHI.

117. Plaintiff and others similarly situated relied on Defendants' invoices and paid them.

118. Defendants misrepresented the actual amount owed by Plaintiff and others similarly situated for the production of their PHI, thereby requesting payment by deceit from Plaintiff and others similarly situated.

119. Defendants' invoices charged an amount that was unreasonable, illegal, unlawful, inequitable and unjust as they were in violation of 45 CRF 164.524(c)(4)(i-iv).

120. Because Plaintiff and others similarly situated had a right to receive their electronically stored PHI in electronic format for six dollars and fifty cents ($6.50), and Defendants received from Plaintiff and others similarly more than six dollars and fifty cents ($6.50), Defendants received a benefit through misrepresentation and deceit of value from Plaintiff and others similarly situated.

121. The benefits Defendants retained were based on unreasonable, illegal, unlawful, inequitable and unjust charges in that Defendants billed per page and exceeded the maximum six dollars and fifty cents ($6.50) that could be charged based on Plaintiff and others similarly situated's requests.

122. Defendants will not be prejudiced by refunding the amounts Plaintiff and others similarly situated paid in excess of six dollars and fifty cents ($6.50).

123. Based on the illegal retention of Plaintiff's fifty-eight dollars and seventy-seven cents ($58.77) and amounts of others similarly situated to be determined at trial, Defendants have been unjustly enriched.

WHEREFORE, Plaintiff and others similarly situated, demand judgment against Defendants and pray for: compensatory damages, as well as reasonable attorneys' fees and costs, including pre-judgment and post-judgment interest as provided by law, and for such other relief the Court deems fair and equitable.

## COUNT III
## FRAUD

124. Plaintiff and a class of others similarly situated re-allege and incorporate by reference each and every averment of this Complaint as though fully set forth herein.

125. Plaintiff and others similarly situated requested their PHI be produced in electronic format from their medical providers.

126. Defendants serviced Plaintiff and others similarly situated's requests and created invoices with the intent that Plaintiff and others similarly situated would rely on the charged amount in connection with the sale of their PHI.

127. Defendants represented to Plaintiff and others similarly situated that they must pay in excess of six dollars and fifty cents ($6.50) for their PHI maintained and requested in electronic format.

128. Defendants' representation to Plaintiff and others similarly situated was false, as such, Defendants' invoices were a misrepresentation, misleading statement and based on

21

deceptive practices by charging in excess of six dollars and fifty cents ($6.50) for their services.

129. Defendants knew or should have known their billing practice of charging more than six dollars and fifty cents ($6.50) for electronically stored medical records produced in electronic format was unreasonable and in violation of 45 CFR 164.524(c)(4), and as such, Defendants knew or should have known they were overcharging Plaintiff and others similarly situated for their PHI.

130. Plaintiff and others similarly situated relied on Defendants' invoices and paid them.

131. Defendants' representation to Plaintiff and others similarly situated that they must pay in excess of six dollars and fifty cents ($6.50) for their PHI was material to Plaintiffs and others similarly situated paying their invoices.

132. Defendants maintained this fraudulent billing practice as it generated significant money for them.

133. As a result of Defendants' false representations, Plaintiff others similarly situated have suffered damages in paying in excess of six dollars and fifty cents ($6.50) for PHI.

134. As shown by the foregoing, Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff and others similarly situated; thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

WHEREFORE, Plaintiffs and others similarly situated, demand judgment against Defendants and pray for: compensatory damages, punitive damages, as well as reasonable attorneys' fees and

costs of the action, including prejudgment interest, and for such other and further relief as this Court deems just and proper.

**COUNT IV**
**NEGLIGENT MISREPRESENTATION**

135. Plaintiff and a class of others similarly situated re-allege and incorporate by reference each and every averment of this Complaint as though fully set forth herein.

136. Defendants assumed a position of superiority and influence over those consumers who requested their PHI.

137. Only owing up to six dollars and fifty cents ($6.50) when a consumer requests electronically stored PHI be produced in electronic format is special knowledge by Defendants that is material to the amount that a consumer must pay when requesting the production of PHI from a medical provider.

138. Defendants created invoices and charged Plaintiff and others similarly situated more than six dollars and fifty cents ($6.50) for Defendants' service when it should have only charged Plaintiff and others similarly situated a maximum of six dollars and fifty cents ($6.50) for those services.

139. When Defendants created and sent invoices to Plaintiff and others similarly situated, Defendants made representations to Plaintiff and others similarly situated that they owed in excess of six dollars and fifty cents ($6.50) for their PHI maintained and requested in electronic format.

140. The creation and production of the invoices to Plaintiff and others similarly situated were the result of, at minimum, Defendants failure to exercise reasonable care or competence in supply Plaintiff and others similarly situated's electronically stored PHI for six dollars and

fifty cents ($6.50) because Defendants knew or should have known the amount that can be charged for PHI.

141. Plaintiff and others similarly situated were unaware that the statements made in Defendants' invoices were false.

142. Defendants created invoices with the intent that Plaintiff and others similarly situated would rely on the charged amount in connection with the sale of their PHI.

143. Defendants' representation to Plaintiff and others similarly situated that they must pay in excess of six dollars an fifty cents ($6.50) for their PHI was material to Plaintiff and others similarly situated in paying their invoices.

144. Plaintiff and others similarly situated justifiably relied upon Defendants' statements believing them to be true, and in so doing used ordinary and reasonable care; Plaintiff and others similarly situated paid in excess of six dollars and fifty cents ($6.50) for their PHI.

145. As a direct result of Defendants' false representations, Plaintiff and others similarly situated have suffered damages in paying in excess of six dollars and fifty ($6.50) for PHI.

146. As shown by the foregoing, Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

WHEREFORE, Plaintiff and others similarly situated, demand judgment against Defendants and pray for: compensatory damages, punitive damages, as well as reasonable attorneys' fees and costs of the action, including prejudgment interest, and for such other and further relief as this Court deems just and proper.

## COUNT V
## VIOLATIONS OF THE MISSOURI MERCHANDISING PRACTICES ACT

24

**(MO. REV. STAT. §407.020)**

147. Plaintiff and a class of others similarly situated re-allege and incorporate by reference each and every averment of this Complaint as though fully set forth herein.

148. Defendants are for-profit companies engaged in the sale of PHI to customers throughout the State of Missouri.

149. For at least the last five (5) years, Defendants have been overcharging customers for the sale of PHI in violation of the Missouri Merchandising Practices Act (hereinafter sometimes referred to as "the MMPA") for unlawful merchandizing practices.

150. Within in the last five years, Plaintiff and others similarly situated purchased their PHI from Defendants which was maintained and requested in electronic format.

151. When Plaintiff and others similarly situated requested their PHI be produced in electronic format, the most they owed for the production for this PHI was six dollars and fifty cents ($6.50).

152. Defendants sold Plaintiff and others similarly situated their PHI without conspicuously disclosing that maximum amount owed for their request was six dollars and fifty cents ($6.50).

153. Defendants' created deceptive and misleading invoices, charging more than six dollars an fifty cents ($6.50), a practice Defendants engaged in their normal course of business.

154. Defendants creation and presentation of Plaintiff and others similarly situated, created confusion and misunderstanding on what Plaintiff and others similarly situated actually owed for the production of their PHI that had been stored in electronic format and requested to be produced in electronic format.

155. Based on Defendants' deceitful and illegal conduct, Plaintiff and others similarly situated paid Defendants' outstanding invoices.

156. Plaintiff and others similarly situated's losses were the result of deceptive, fraudulent, and unfair practices by Defendants.

157. All PHI purchased under this class action were purchased primarily for personal use.

158. Plaintiffs and a class of similarly situated have suffered significant and ascertainable losses including but not limited to the cost charged in excess of six dollars and fifty cents ($6.50) for their PHI.

159. As shown by the foregoing, Defendants' conduct was willful, wanton, malicious, and showed complete indifference to or conscious disregard for the rights of others, including the rights of Plaintiff; thus, justifying an award of punitive damages in an amount sufficient to punish Defendants or to deter them and other companies from like conduct in the future.

160. Defendants are therefore liable to Plaintiff and others similarly situated for actual damages, punitive damages, and reasonable attorney fees, as provided by Mo. Rev. Stat. § 407.025.

WHEREFORE, Plaintiff and others similarly situated, demand judgment against Defendants and pray for: compensatory damages, punitive damages, as well as reasonable attorneys' fees and costs of the action, including prejudgment interest, and for such other and further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury of all issues on behalf of himself and others similarly situated described herein in the United States District Court for the Western District of Missouri.

*(Signature on the following page)*

26

Respectfully Submitted,

**CORNERSTONE LAW FIRM**

By: _____/s/ Brittany C. Mehl_____
        Brittany C. Mehl      MO BAR 67334
        b.mehl@cornerstonefirm.com
        Joshua P. Wunderlich MO BAR 64254
        j.wunderlich@cornerstonefirm.com
        8350 N. St. Clair Ave. Suite 225
        Kansas City, Missouri 64151
        Telephone        (816) 581-4040
        Facsimile        (816) 741-8889
        **ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing was electronically filed with the

Court this 20th day of July 2018, which will send a notice of electronic filing to the following:

Jonathan B. Potts
Bryan Cave Leighton Paisner LLP
One Metropolitan Square
211 N. Broadway, Ste. 3600
St. Louis, MO 63102
Jonathan.potts@bclplaw.com

Jena M. Valdetero
161 North Clark St., Ste. 4300
Chicago, IL 60601
Jena.valdetero@bclplaw.com

                ____/s/ Brittany C. Mehl_____
                Attorney for Plaintiff

27